The next case is that of Tricia Galbreath v. Hale County, Alabama and others. Is there water in there? You know, somebody told me one time, never drink that water. I'm just saying. You filled it this morning, didn't you? Fill it this morning. It should be okay. Probably. Good morning. Good morning, Your Honor. Robert Lockwood for the Hale County defendants in this case, Your Honor. May it please the court. Tricia Galbreath did not suffer a violation of any pre-termination due process in this case for three separate and independent reasons. First of all, the state of Alabama itself provided Ms. Galbreath with a remedy for any alleged deprivation of pre-termination due process. But you understand under Cleveland v. Laddermill, for the most part, that what you just said is going to handle most cases. But if there's an absolute total deprivation of due process at the pre-termination phase, that case indicates that is a violation. And that's what the plaintiff was alleging here. That certainly is the allegation, Your Honor, but I disagree with the premise. That is, under Laddermill, there was a process that was sanctioned by the state itself. There was actually a tenure statute itself that set forth the procedure to be followed. And the defendants in that case followed the statute. They did exactly what the state told them to do in the statute. It's just like Zineman v. Birch, Your Honor, where there is voluntary versus involuntary commitment. The defendants in that case were explicitly following a state statute. So I would agree with you, Your Honor, if the state itself deprives an employee of a remedy through a state statute, then certainly McKinney v. Pate would not apply. But what McKinney explicitly says is, if the state itself provides a remedy, and through later explanation of the courts, that includes the state court system, then if the state itself does provide a remedy, then there is no explicit violation of the due process clause. And this is an important distinction, that if you carefully look through McKinney, what McKinney says is that very thing. That this was, in McKinney, obviously, what you had was a pre-termination hearing where you had county commissioners who held a biased hearing. And in reviewing that process in the pre-termination context, what the Eleventh Circuit said was, that is the action of the commissioners itself. It is not sanctioned by the state of Florida. And instead, there are other available remedies in the state of Florida, and therefore there has not been a violation. And that's the very premise that we have here in this case, Your Honor. We have, and quite frankly, in the state of Alabama, you've got 67 counties, 400-and-something municipalities. The state of Alabama itself cannot be expected to know what every policy in every county and every municipality is. Instead, the issue is, can the state of Alabama, sometime later, or even contemporaneously, provide an employee with a remedy? And that's what McKinney says it should be done. And that is exactly what could have been done in this case. But, again, McKinney is not an exhaustion rule. Clearly, Horton v. Board of Commissioners and a lot of other cases support the fact that it's an availability rule. Is there an available remedy in the state of Alabama court system that would give any employee that has tenure rights the right to notice and an opportunity to be heard? And clearly, the 11th Circuit has said in Bell v. City of Demopolis that, yes, Alabama courts do review terminations for compliance with due process. Not only that, in Cotton v. Jackson, this court, admittedly applying Georgia law, recognized that the state of Georgia allows a writ of mandamus to compel state officials to do that which ought to be done. Counsel, it appears that the plaintiff here is not arguing the McKinney rule that the county contravened established procedure in holding a hearing. She's arguing she never got a hearing. That's right, Your Honor. But respectfully, Your Honor, that's not the McKinney rule. The McKinney rule is if the state provides any remedy available to correct an alleged deprivation, then there is no violation for purposes of Section 1983. McKinney draws a distinct line between deprivations and violations, and certainly we can talk about whether or not she got a hearing. But even if you assume she got no pre-termination due process whatsoever, the question is, did the state of Alabama, through its court system, provide her a way that she could compel such a notice and hearing? And clearly, in Bell v. City of Demopolis, clearly through Alabama's writ of mandamus process, such a hearing can be compelled. You can compel state officials from an Alabama state circuit court to give a hearing. But she never got a hearing. Exactly, Your Honor. And she was terminated on the spot. What value does a right under the state statute give you under those circumstances? Respectfully, Your Honor, it wasn't a state statute. There was no state statute. At most, there was a policy. But again, the question is, could she have gone to court? Not did she go to court, but was there an available remedy? Was it available to her? It's not exhaustion if the state of Alabama gives her an available remedy, a way to get the circuit court judge to say, Hale County Commission, give her notice and a hearing. Circuit court judges in Alabama could have reversed this termination under a writ of mandamus and said, put her back to work. If you want to fire her, give her proper notice, give her a hearing, and then there would be no violation under Section 1983. That's explicitly what McKinney says. Now, also, Judge O'Scanlan, respectfully, I would disagree with the concept that she did not receive a hearing, because she clearly did get notice in the form of the meeting with the county commissioners in the executive session. She read the charges against her, and at the end of reading those charges, Ms. Galbraith was given the opportunity to provide a response, and she said, No comment. You can talk to my attorney. That's a disputed issue of fact, and she had evidence on her side, I thought, both at the public hearing and in this private hearing, that she was told to shut up and not talk, and while you may think she wasn't telling the truth, she had evidence to support that, didn't she? I think you can take the shut up, don't talk arguments, Your Honor, but that is not irreconcilable, and in fact is a manifest disregard of the fact that she was initially told, shut up, don't talk, in response to the reading of the charges, and then once the reading of the charges was completed, she herself on direct at trial said, I guess I said no comment at the end. Why didn't you respond? I wanted to let my attorney handle it. I was frustrated. She was given the opportunity. But that's a jury argument, isn't it, and the jury heard all that and decided they rejected your position. I would say, Your Honor, that it's an established, undisputed fact of what happened in that hearing, but respectfully, we can disagree on that. Well, apparently the jury disagreed. Fair enough, Your Honor. Now, in addition, even to get to this issue of whether or not she was entitled to a hearing, assuming McKinney doesn't apply, well, she only gets processed if she, in fact, possessed a legitimate expectation of continuing employment. Wasn't she under a contract? She was under an express written contract, Your Honor. However, the contract itself said she could be terminated at any point without cause. It also gave her the opportunity to quit at any time without cause. Without cause terminations are at will terminations, Your Honor. Now, she was given a remedy under that contract that she could sue for the entire balance of her salary. But the fact of the matter is, under her express written contract, she could be terminated without cause, and a without cause termination, a without cause provision gives no rise. How would she win her lawsuit if she tried to get compensation? How would she get compensation if you fired her on a whim? She'd sue for breach of contract in state court, Your Honor. And what's the ground for that? Because you just said she was an at-will employee. Isn't the ground for that that she actually had performed well? Well, Your Honor, what the provision to the contract says is, if we fire you without cause, you're still entitled to the balance of the salary under the contract. So she would simply sue in state circuit court and say, you fired me without cause. I hereby demand the balance of the contract, balance of my salary as the contract provides. And then a circuit court judge could provide her with that remedy if he in fact found there was a breach. Now, the other ground for finding a property interest in this case was the Hale County policy manual itself. And we've cited in our brief that that's an issue that arises under state law as to whether or not the policy manual can constitute an employment contract. And what Hoffman LaRoche in Alabama says is there has to be a clear and unequivocal offer of employment. And in this case, there wasn't. For this reason, the objective manifestations of the parties under Alabama law is what helps you determine if there's a clear and unequivocal offer. And Ms. Galbraith testified, probably most importantly, that she never served a probationary period. Now, where the district court and Ms. Galbraith rely upon is the fact that the policy manual says a distinction between probationary and permanent employees. But if you're never probationary, how could you be permanent? And therefore, there wasn't a clear and unequivocal offer. Of course, the district court wrote a long and, I thought, thorough written order on your motion for new trial. And quotes from Hoffman LaRoche in the language that she quoted talks about whether the language contained in the handbook was specific enough to constitute an offer. And, again, found that it had been as an alternative to the property interest also bestowed on her by the contract. So it sounds like she reads Hoffman LaRoche a little bit differently than you do. Fair enough, Your Honor. Thank you. Good morning. Good morning. I'm Charles Ingram, and I represent the plaintiff in the appellee, Tricia Galbraith. It looks like Tricia, but she pronounces it Tricia. Oh, sorry. I would have never thought that would be the one that would trip me up. We spent a lot of time in it, so learn during that time. Thank you. But the issues that Mr. Lockwood brings in this appeal all center around the property interest. Did Ms. Galbraith have a property interest? And also, did she have notice and opportunity to be heard regarding the due process argument? And the majority of the issues on appeal all center around that. As far as the property interest, and one of the things Mr. Lockwood just stated answering your question, that whether the handbook forms a contract is an objective standard, but then Mr. Lockwood cites to Ms. Galbraith's subjective interpretation of it, it is an objective standard. And part in the appeal, Mr. Lockwood cites to Judge Crawford's interpretation of the handbook and Ms. Galbraith's, but objectively and as the district court reviewed, the handbook creates a property interest. And it does this by putting all employees of Hale County into two parts, probationary and permanent. And a probationary employee becomes permanent after they've served 90 days pursuant to the handbook. And Ms. Galbraith had been there longer than 90 days. On page two of the handbook, it states that all permanent employees are entitled to due process. And in continued reading, the term permanent comes up over and over again. In the case of Green v. City of Hamilton, the court stated that what they found most persuasive in the handbook creating a property interest was the use of the word permanent throughout. The property interest also, there was another case, Lankford v. Hale County, which was an appeal in a case that was just prior to this one. It was the same handbook, the same defendant, and Judge DeBose in that case found that the handbook established a property interest. And in summary judgment, when Judge Grenade was writing to this, she stated that Judge DeBose's analysis of the handbook creating a property interest was so thorough that she saw no reason to deviate from it. Now, the property interest being created by the handbook, which Ms. Galbraith received, she signed for it, and it was placed in her personnel file, she also had a written contract. And the written contract called for termination for cause, and as Mr. Lockwood pointed out, she could be terminated not for cause. But the contract itself refers to, on page 2 under benefits, that the employee, Ms. Galbraith, is entitled to all the benefits of any Hale County employee, which would include the handbook and the provisions in there. But as to Mr. Lockwood's argument that because she could be terminated for any cause, if that happened, she was still entitled to receive all of her pay. And the pay is the property interest. The only way Hale County could take her pay away from her was for a for-cause termination pursuant to the written contract. Now, after the property interest is established, the next issue that the defendant and the appellant's appeal deals with is notice and opportunity to be heard. What I'm concerned most about, just speaking for myself, is I think the biggest issue we have here is how to apply McKinney v. Pate in this context, because McKinney v. Pate indicated that procedural due process violations do not become complete until the state refuses to provide due process. A plaintiff can suffer a procedural deprivation, but that's not a violation as long as ultimately there's the power to review and remedy any procedural deficiency. And the court concluded there was an available adequate remedy because in that case you could go to a higher court, writ of cert, mandamus, whatever, and appeal. Given that and given the fact that there would have been some ability for your client to seek mandamus or cert or something later on with a higher court, tell us how we handle McKinney v. Pate in this situation. Yes, Your Honor, and I heard what Mr. Lockwood stated about it, and I've read their argument. In McKinney, Mr. McKinney was given notice and given a three-day trial pre-termination. He was given notice and opportunity to be heard before his property interest, his job, was taken away from him. Under Mr. Lockwood's interpretation and argument, nobody has to do anything in Alabama. You can take jobs away left, right, and in between because unless somebody complains after the fact and after we've taken your property interest, you can do something about it then. He argues McKinney v. Pate supports that argument. McKinney v. Pate says we're not going to start picking micromanaging what happened with procedurals, procedures that weren't followed. We're just going to say if you have a higher court you can go to, you've got to go to that court. That's correct, Your Honor, but McKinney deals with these things happening pre-termination. The bias in McKinney was a defect in the pre-termination notice and opportunity to be heard. McKinney got notice and opportunity to be heard. His only problem with it was there was bias in the decision-maker. And, Your Honor, as you pointed out, to do otherwise would contradict the Board of Education or Cleveland v. Loudermill, the Supreme Court case, in which there was no pre-termination due process. Now, the appellants make the argument that Loudermill dealt with a state statute and that was the focus, but I disagree. Loudermill discusses the fact that a person deserves a meaningful notice and opportunity to be heard, that that should be done pre-termination. We don't take life, liberty, or property and then after we take it say, okay, you've got a remedy in state court, go at it at that point. Go on. Oh, sorry. No, you go ahead. I was going to say, what is your response to Mr. Lockwood's argument that she did indeed have a pre-termination hearing? Your Honor, Loudermill discusses the fact that the hearing needs to be, notice and opportunity to be heard needs to be meaningful. You can't just be walking out to your car in the parking lot and somebody jump out and say, you're fired, what do you have to say about it? And that essentially, without going out to a car in the parking lot, is what happened here. There was notice that personnel would be discussed in executive session about the county attorney and the county administrator, Ms. Galbraith. That's all it said. They conduct this executive session where they read out a disciplinary notice, which you're not dressing the way we think you should dress. You're using language we don't like. You're not here when we want you here. And each time she attempts to explain what's going on and she's told to shut up. Shut up. You know, you're not dressing right. Shut up. And then at the very end, okay, do you have anything to say about it? She's surprised. She's shocked. And our argument and the jury agreed that this notice and opportunity to be heard was not meaningful. Wasn't one of the facts before the jury that she, it was part of her job to attend these meetings, and so from her point of view, there was nothing different about this meeting. She wasn't there because she knew her own position with the county was going to be discussed. She was there as a part of her job. Wasn't that before the jury? That's correct, Your Honor. As county administrator, she attended all of the county commission meetings. She attended the executive session. She took minutes at these meetings. Now, the appellants and Mr. Lockwood presented to the jury that she didn't take the minutes. That was one of the flaws in a later audit, and one of the examples the appellants used, that she did a terrible job, is because not all of the minutes were in the minute book. But I would point out to the court that the defense was using this to try to establish the fact that the last contract, the 2012 contract, did not exist because at the onset of the case, there were no minutes reflecting that. We did find the minutes in discovery. They had been typed up by Ms. Galbraith, but they had never been typed and signed off by the commission and placed in the minute book. Well, the defense used this to show, well, she did a terrible job. The minutes weren't in the minute book. But the jury understood and saw that we went to trial years after the fact, and the commission had plenty of opportunity to print out the minutes, sign them, and get them in the minute book. They hadn't done it at that point, and the jury took that into consideration that perhaps Ms. Galbraith's job, her performance, was not as bad as the defense was trying to have them believe. But, Your Honor, after the executive session, and they asked Ms. Galbraith to sign off on a form that said, here's your disciplinary notice, and she did not sign it. But the form stated, here's what you've done wrong. Here are your corrective steps, and if you don't do these things, it could lead to your termination. It stated that on the form. Commissioner Rogers only signed the form after he was assured that this had nothing to do with her termination. They come out of executive session, go into general session, and Commissioner Anderson makes a motion to terminate Ms. Galbraith on the spot. It was seconded by Commissioners Hamilton, and Anderson voted to terminate her. First, before you get to that, was she given an opportunity to respond at the open meeting to this? She was not. So you're saying even if you count what happened at the private meeting, the executive session as a response, she was in a different ballgame. That was we may have disciplinary proceedings. When you get to we're going to fire you, there was absolutely no opportunity for her to respond. That's correct. And Commissioner Anderson, excuse me, Commissioner Rhodes stated he abstained from the vote to terminate her, and he stated the reason he abstained was because he wanted to hear what she had to say. Which opportunity she was not given. That's correct. And Commissioner Rogers voted against terminating her, and he stated he doesn't know, and by the time we got to trial, he didn't know to this day why she was terminated. There was no discussion as to why she was terminated at that point. So in general session, Your Honor, she was given no opportunity to respond. It was just a motion. I moved to terminate Ms. Galbraith. It was seconded and voted on. Two of the commissioners voted to terminate her. One voted against it, and Commissioner Rhodes abstained for the reason I stated. Now, along with the notice and opportunity to be heard, all of that went to the jury, and the jury got to they heard all the testimony. They saw all the witnesses. All of the commissioners spoke except for David Rogers, whose testimony was submitted by declaration. He had a medical emergency. But the jury heard all that, and the jury also agreed that Ms. Galbraith did not get notice and opportunity to be heard. So that's all I have, unless the Court has any more questions. Thank you so much. Thank you. Judge Martin, I didn't think it was probably appropriate for me to wax eloquent in response to your observation on Hoffman-LaRoche, but certainly I'd like to take this opportunity to do so regarding the district court's reading of Hoffman-LaRoche. And certainly the district court does read Hoffman-LaRoche differently than I do, and respectfully, I believe that the district court read Hoffman-LaRoche with legal error. That, in fact, what Hoffman-LaRoche and its progeny say is that, yes, it's an objective test to determine whether or not a policy manual constitutes an employment contract, but you look at the objective manifestation of the parties to get there. And that comes from the Bell v. South Central Bell case in Alabama. And so, again, it is crucial not to merely look at what the handbook says, but actually, what did the parties do? And explicitly, nobody in this case was treating this policy manual as applicable to Tricia Galbraith. The board, I'm sorry, the county commission wasn't, and Ms. Galbraith certainly wasn't. And so when nobody acts as though it applies through their objective manifestations, when Ms. Galbraith says, no, the disciplinary policies didn't apply to me, I didn't have to come in to work on time, like it said, I could set my own hours, I didn't serve a probationary period, she said none of those things applied or she followed. That is an objective manifestation that there was, that the handbook doesn't apply, and therefore there wasn't a clear and unequivocal offer. And additionally, the other reason why there's not a clear and unequivocal offer, and this issue was also raised in the Langford case, which is somewhat of a companion case, is there's different categories of employees set forth in the handbook itself. You've got probationary, you've got permanent, but then the handbook also sets forth supervisory management staff. And certainly that is an issue as to whether or not Ms. Galbraith would fall into that third category of employee, supervisory management staff. And she certainly, I think, based upon her duties would, and certainly probably considered herself to be, a contract employee. So for that reason, respectfully, I believe there was legal error in the application of Hoffman-LaRoche. The second issue raised by Ms. Galbraith today is that the pay that she could have gotten under the without cause provision, pay is a property interest. Well, that's going to transform every contract that any governmental entity enters into into a potential due process claim. Anytime there's a dispute as to whether money is owed under a contract, if that was the rule, then due process would have to be followed rather than a simple breach of contract action. And then finally, with regard to McKinney v. Pate, Judge Carnes, the exception that might be out there is whether or not there's absolutely nothing given in the pre-termination context. I mean, that's what Ms. Galbraith wants you to buy into as an exception. But in this case, she at least got something. We can argue to a jury over whether or not it adequately satisfied the standards of pre-termination due process, and certainly I believe it did. But this is not a case where there's absolutely an absence of any process whatsoever. Well, to me the significant thing is the ability to respond. The ability to respond assumes the other things, notice and explanation, the ability to respond. And according to your opposing counsel, the real decision here is the termination, not even what happened in executive session. And when they walk out and spring this on her, she's not allowed to respond at all. And respectfully, Your Honor, I don't think the magic words, you are about to be terminated, have to be used. And I've learned this lesson the hard way in front of this court. I was on the plaintiffs. Don't they have to be used when the last thing they told her at the meeting was, here's your disciplinary form and progressive discipline, and then all of a sudden termination comes out of the clear blue at the open session? Respectfully, Your Honor, the president from this court says no. The Ogburria case that I represented Dr. Ogburria on Wasn't that an unpublished decision? No, ma'am, that was actually a published decision. In that case, he was called into a meeting and basically accused and given an opportunity to respond, but they never said this could lead to your termination. Never said anything. It wasn't from the decision maker. It was an investigatory panel. And the Eleventh Circuit said, yeah, just being able to give a response, that's enough in Ogburria. And while there might be disagreement with that, that's certainly what this court has held and certainly what should apply in this case.  Thank you.